Good afternoon. Our first case this afternoon is City of Lawrenceville v. Vista Securities. Mr. Morthland for the appellant and Mr. Neal for the appellee. You may proceed when you're ready, counsel. Thank you, Your Honor. May it please the court, Mr. Neal. My name is Mark Morthland. I'm here on behalf of Vista Securities. If the court would allow, I'd like to take this opportunity to introduce my son, Michael Morthland, with me today. Last semester's senior year at the University of Illinois, I'm planning on going to law school. I've tried my best to talk him out of it without much success. I might want to take on a few extra clients. I keep talking about engineering and accounting and things like that. He's not buying any of it. Facts of the case are relatively simple. Vista owned a piece of property commonly referred to as 1611 7th Street in Lawrenceville, Illinois. They sell a contract to a gentleman by the name of Lester DeWeese. At some point a year and a half, two years later, the City of Lawrenceville determines that they want to tear it down. They're going to use 65 ILCS 11-31-1 per annum, which is commonly known as the fast track provisions of the demolition statute. They send out, or they host it first as required by statute. Then within a 30-day period, I think they send out a notice to remediate, certified mail return receipt requested to Vista Securities and all other parties of interest. That's going to be issue one that I'm going to discuss at a later point. In addition, they publish the notice to remediate in the local newspaper. Of course, the local newspaper is three hours away from where my client's main office is. Then they also record a notice to remediate. Again, that notice to remediate says the same thing. It's identical in nature to the one that was posted on the building. They proceed to demolish the property. Now, after that, they file a complaint to foreclose their lien. The trial was had on May 23rd. We had a trial. A written ruling was entered by the court on May 23rd, and the court directed the clerk to send a copy of that docket entry to counsel of record. I think Mr. Neal would agree we kind of got that copy late in the game. It didn't say that we were to submit a written order, and so I run a notice of appeal down to the circuit clerk's office. We end up getting a judgment entered. Mr. Neal gets a judgment and there's none pro tonic relating back to the date of the docket entry order. So the issues that I see are really very basic. The first thing, this notice that was mailed, certified mail, to Vista Securities, particularly the notice to remediate, statute requires that it be mailed certified mail. Well, it was signed for by an employee of Dennis Ballinger Real Estate Company. Dennis Ballinger Real Estate Company was not the registered agent of Vista Securities. And was that the address that they had to provide the service to? The address, I believe the address of Vista Securities and Illinois Corporation is 119 West William Street, Cater, Illinois. And that is the address used on the certified mailing. So what's defective? Well, because it was served upon a secretary receptionist of Dennis Ballinger Real Estate Company who is not an employee of Vista Securities. In addition, there too, she is not the secretary of the registered agent. She's the secretary of a completely different company unrelated to Vista Securities and unrelated to the registered agent, Michael Ballinger. Now, there's two cases that I cited, several cases in my brief. But there are two of them that I think are very important that shed a substantial amount of light on this particular issue. The first is Mason v. Freeman National Printing Company. In that case, an employee of the registered agent of the defendant corporation was served with sums in that particular case. And the appellate court came back and said, no, that's a secretary of the registered agent. This makes sense. Registered agent of the defendant corporation is not valid service. They went on, I believe, in that particular case to also say, or maybe it was in the Mason v. Freeman, or it was Mason v. Freeman. I believe that they said that the issue of attacking that service was not waived with the filing of a 1401 petition to vacate. So if there's any question about waiver, our situation is really quite different because we didn't initially, the city didn't litigate anything, nor did Vista. These notices went out, and then boom, the building was knocked down. And then, what, about a year later, the complaints filed foreclosed that lien on the real estate. So we challenged the service of that notice in proper fashion at the time of trial, at least we believe. The next point that I'd like to make, next case is Slates v. IHOP. And, again, I believe I cited that in my brief. In that case, the question came up, well, whose burden is it to establish this agency relationship? And in that particular case, the court said that it was the burden of the plaintiff who had alleged that there was an agency relationship and that service was proper, but the plaintiff has to prove that. So then we have thrust the burden on the city of Lawrenceville to establish that that service on the employee, a secretary employee of an unrelated corporation was valid service on Vista Securities, even though it wasn't the registered agent or an employee of the registered agent. And, again, Mason v. Freeman says serving it on an employee of a registered agent isn't good service. So I think looking at that and following the cases, the cases that I cited are clear that the city had a duty. They had a duty, just like any plaintiff in any lawsuit, to properly serve the entity or individual to bring them in to the lawsuit or, in this case, the demolition party. And they did not do that. I guess we could say maybe that the service of corporation statute in the state of Illinois doesn't govern or doesn't control what a municipality does with regard to serving, using the fast-track provisions of the demolition statute, knocking down a property without any judicial order. But I think the reverse, actually, is true and should be true, should be held to be true, that they're not using any judicial intervention under the fast-track provisions of that statute. They've got a city engineer, a city employee that says, I want to tear that building down, let's ship out the notice, and then let's get it knocked down. So I think that, actually, under that statute, they have to be or should be held to a higher standard. We want to make sure that we get notice to the proper individual and or entity to make sure that we're doing this right. And they didn't do it right in this case. It's clear that the case is safe. Here's who you have to serve. They didn't get the job done. My client didn't find out about it. The building gets knocked down. Next thing you know, we have a lawsuit in our hands. The second issue is, I've always found fascinating, ownership versus holding title. In this particular case, as I've mentioned, the property was sold by virtue of an agreement for deed to Lester DeWeese long prior to the action by the city of knocking down the building. So what is, at that point in time, what is VISTA Security's title?  Well, I think that the case law, which I've cited in my brief, basically says that VISTA Security is merely a title. That's it. But they were the owner of record. They were the owner of record of the property. But who had the use, control, and enjoyment of that property? Lester DeWeese. Not VISTA Security. How would somebody know? The owner of record is Lester DeWeese. How would they know? Well, I guess if they would have, in fact, served my client, my client could have made a phone call and said, I don't own this property. We sold this to Lester DeWeese. So what do you have when you're a vendor under an agreement for deed? I've always argued that you're the mortgagee. You stand in the identical same position as a bank. You're just carrying the loan for the buyer for whatever reason. So I equate VISTA's position as they are a bank, and the owner of the property is, in this case, Lester DeWeese. Of course, Lester DeWeese didn't get any notice of any of this, but I'm not here to argue that at this point in time. What my issue is right now is who's responsible for this judgment? The owner or the mere title holder? Well, the interesting case that I, again, cited in my brief is Mason v. Rosewill. In that particular case, Mason was a contract buyer. He was the vendee under a contract for deed. Property gets taken by virtue of a tax deed procedure. So he petitions for identification under the tax code indemnity file. Trial court throws it out, saying, you're not the owner of the property. The contract vendee is the owner of the property. Trial court says, or the appellate court says, no. He had the use, enjoyment, control of that property by virtue of a contract for deed. He is the owner of that property, not the contract vendor. How do you distinguish your opponent's case in Giaco v. the City of Elgin? It says that court affirmed the trial court's finding that a contract purchaser rises to the status of record owner only if there is evidence of possession, right of control, and a memorandum or other notice filed in the county recorder's office. Well, the first part of that, what did you say? Evidence of ownership, like driving by and saying that someone's living in that property and exercising diligent inquiry and asking them, what are you doing here, what's your name? But it says only if there's evidence of a memorandum or other notice filed in the county recorder's office. You know, I think that even, it's our position, even if it's not recorded, if there is no recording. And we really don't know whether the burden that was placed upon Lester DeWeese to record that and he chose not to record it. If that's the case, why should my client be punished with his judgment? So after Mesa, I cited another case, IMN Acceptance Corporation v. First National Bank Trust Company. And Mr. Neal correctly pointed out that that deals with an Illinois land trust. But I cited it basically for the reasoning, because in that particular case, that court was wrestling with title versus ownership. And they concluded that in that, under Illinois land trust, the bank just holds title. Just like Vista just holds title. That the real owner in this situation is the beneficiary under the Illinois land trust. Just like in our situation, the beneficiary or owner just happens to be the contract Vendee Lester DeWeese. Again, our concern being that under that judgment that was entered, there may be a deficiency after they have a share of sale. We don't believe, because we are not the owner, we are the mortgagee bank Vendee, that we should be responsible for any deficiency. So based upon those two issues, I believe the court should reverse the findings of the trial court, and I ask the court to do so. Thank you. Counsel, Mr. Neal. You'll have an opportunity for rebuttal. Thank you, Your Honor. May it please the court and counsel. My name is James Gale. I appear on behalf of the city of Lawrenceville. As counsel has correctly pointed out, the city pursued the demolition of a certain residential property in Lawrenceville, pursuant to section 11-31-1E, subparagraph E of the Illinois Municipal Code, which provides an expedited means by which a municipality can demolish certain vacant and abandoned properties. And this procedure was followed pursuant to that set out by subparagraph E. Now the first thing that the city did, and this is reflected in the evidence, was to perform a title search of the property. And this title search revealed that there was one owner of record, and that was Vista Securities Inc. The title search revealed that there had been no contractor deed recorded. There had been no memorandum of contract recorded. There had been no deed of conveyance of any kind recorded. That is to say, there was nothing of record to indicate that any party other than Vista Securities owned this property. And the city certainly exercised diligence in determining that status. And we quote the case of City of Chicago v. General Realty Corporation, which held that the title search constitutes a diligent effort to determine ownership interests. Now at trial, it was also brought out, and this is reflected in the trial exhibits, that this property was abandoned. It was burned out. There was no one in possession of the property, and it had in fact been in that deteriorated condition for months before the city undertook the title search and initiated the demolition procedures under subparagraph E. Burned over there? Yes, it was a burned out residence and was abandoned, which under subparagraph E, to follow that procedure, it has to be an abandoned property. So it's uncontradicted in the trial record that this property no one was in possession of. Now at trial, Vista Securities presented as evidence a photocopy of a purported contract for deed between it and a lesser deweese. Again, we characterize this as a fan of purchaser in our brief, and I believe that is the best characterization. There was no evidence presented that a lesser deweese ever claimed an interest in this property. He was not produced at trial. There was no evidence that a lesser deweese ever had possession of it. So in other words, there was no evidence, certainly nothing in the public records, that this individual by the name of lesser deweese ever claimed an interest in a property other than this photocopied contract for deed. As the court has already referenced, the Siaco v. City of Elton, there must be evidence of some type of possession, right of control, or recorded notice of ownership to put a party on notice, and that is simply lacking in this case. The cases cited by Vista Securities in support of their notion that they aren't the owners of the property do not apply here. People v. Chicago Title of Trust, Mason v. Roswell, Hancocky v. Property Tax Appeal Board, all relate to parties in interest who can point to a recorded incident showing an ownership interest in the property, and that simply is lacking here. There was not even any evidence presented at trial that Vista Securities executed a deed to this lesser deweese. So in other words, it could – I mean if we are left to speculate, was this a defaulted contract, we don't know. But the bottom line is that there was nothing of record and nothing in the evidence to show that lesser deweese held any type of protectable interest in the property. So it is our position that the evidence was clear in this case that Vista Securities was the sole owner of the property. Now, having established that under subparagraph E, the city is required to issue notice to that owner of record. As counsel has indicated, there's essentially four things that have to be done. The property itself has to be posted with a notice, which was done. The property – excuse me – a notice to remediate has to be sent by certified mail to the owner of record. Third, that notice to remediate is published in a newspaper located in the municipality three days in a row. And finally, the notice to remediate is filed in the county recorder's office. Now, it is uncontradicted that all of those steps were taken by the municipality before it undertook demolition of this property. The issue that has been raised by Vista Securities is simply this, that the certified mail should have been sent to the corporate registered agent of Vista Securities. Now, if you examine the language in subparagraph E, it does not require that the certified mailing be sent to the registered agent of a corporate owner. It simply states that it is to be sent to the owner of record. And it is uncontradicted in this case that the certified mailing was sent to the business offices of Vista Securities Inc. Was this a shared office? It was. Is that how that got confused with the service not on Vista but on this other person? Well, when you say it was a combined or mixed office, Vista Securities is one of several companies that the Ballinger family owned for the purpose of acquiring tax-delinquent properties. Vista Securities is a real estate company. They all operate out of this same office. It was borne out at the trial that Alyssa Cartee was an employee of the Ballinger family. Now, she went to the post office, and as was her duties, she picked up the mail for all the companies involved. And she signed as the agent of Vista Securities. And is that a matter of record? She testified to that at trial? She did not testify. Mr. Ballinger, on cross-examination, indicated that Alyssa Carter was an employee of this real estate company. And it was also brought out that the real estate company, which was owned by the Ballinger family, was also the same location where Vista Securities. Again, a Ballinger family operation. I put that under the umbrella. And did he admit that it was her job to go pick up the mail? Yes. It was one of her duties to pick up the mail. So it's our position, Your Honor, that first of all, subparagraph E does not require a mailing or a notice to be served as would be civil process upon a corporation. That is to say there's nothing in the language of subparagraph E that says the notice must be mailed as might be civil process. That's not what we're looking at here. We're looking at the notices that are to be sent before the city undertakes to commence any devolution. So it's our position, Your Honor, that the city did comply with subparagraph E of 1131-1 and that, in fact, Vista was appropriately notified of what the city's intent here was if this property was not taken care of. Now, the final argument that was raised by Vista Securities in its brief but not touched upon during oral argument was the constitutionality of subparagraph E of section 11-31-1. In our brief, we have raised Supreme Court Rule 19 indicating that Vista Securities has failed to comply with that rule inasmuch as it did not notify the Attorney General's office prior to raising this issue on appeal as to its intent to attack the constitutionality of that statute. In this particular case, and the trial record will reflect this, the issue of constitutionality was first raised in a motion for lien to amend to file a counterclaim by Vista Securities. When Lawrenceville filed its complaint to foreclose on the lien, Vista Securities filed an answer with general denials. The city then filed a motion for summary judgment in the matter, and after our motion for summary judgment was filed, Vista Securities came back and filed a motion for lien to file a counterclaim. Over the city's objection, the court granted lien for that counterclaim to be filed but then summarily ruled after a briefing by the parties that 11-31-1E was in fact constitutional law in its face. The matter was not raised during the course of the trial. However, Vista Securities has again raised it for purposes of this appeal, and it's our position that Vista Securities should have complied with Supreme Court Rule 19, which it did not. In any event, Your Honor, we believe we have set forth in our brief the cases which we think clearly establish that that rule is constitutional. We rely primarily on two cases, one an Illinois Supreme Court case, Village of Lake Vila v. Stokovich, which actually was looking at subparagraph A of the demolition statute where a city would send a 15-day notice and then commence an actual court case to seek an order of demolition. However, the Stokovich case I think is relevant in its determination that this statute was a proper exercise of a municipality's police power and therefore is not subject to a strict scrutiny test but rather a rational basis test. And the court there clearly held that a property owner certainly does not have a fundamental right to maintain a property that is dangerous to the public, and therefore the court held that 11-31-1 is constitutional. The McKenzie v. City of Chicago case is a Seventh Circuit decision, and there again the court held that in particular subparagraph E satisfied the rational basis test. The court there again noted that no fundamental right was in play, and moreover that the multiple notice requirements that are required under subparagraph E satisfy any due process issues. That is to say, not only the posting, the publication, and the recording in the courthouse, but the mailing to the property owner. So, Your Honor, it's our position that the City of Lawrenceville did comply with this statute, that it was a constitutional action on the part of the city, and that the trial court's judgment should be affirmed. Thank you. Thank you, counsel. Mr. Martham, have rebuttals heard? Why don't we deal with that last issue about the disclaimer on the constitutional issue? You didn't have any reply briefs, so are you abandoning that? I am. I think Rule 19 doesn't require that. I wanted to jump back and correct something you think. The secretary didn't go get the mail at the post office. This was mailed directly to 119 West William Street Suite 300 in Decatur, Illinois. So the mail was actually delivered to the secretary, and I want to be clear that the secretary was a paid employee of Dennis Ballinger Real Estate Company. That Dennis Ballinger Jr. testified that Vista Securities did not have any employees. That Vista Securities' registered agent is Michael Ballinger. So I think those are very relevant points on the question of whether or not there was proper service. And it sounded like Mr. Neal might be suggesting that the city under these fast track provisions are not governed by the Code of Civil Procedure with regard to service on corporations, and that maybe there might be a little bit lesser requirement, lesser standard of municipalities, and I would beg to differ. The statute doesn't require personal service. This is a mailed notice to the owner of the record, and if you send it to the address and somebody else picks it up, how have you not complied? And I don't mean to answer a question with a question, but if they used a completely different address, let's say, and mailed it to Hardee's… That would be wrong. That would not be valid service. I would agree 100%. So it's… Mr. Neal's suggesting that the city's only duty is to put that in a mailbox, and then they have complied. And I think that's absolutely incorrect. They have to… If you're knocking down a building without judicial intervention, you have to, I suggest, rise to a higher standard than that which appears in the Code of Civil Procedure, because I'm not going to get my day in court. Now, they've talked about… The notice says something about that you can file some action in a court of proper jurisdiction to block the actions of the city. Well, then we're going to get into the notice, the argument of what does that notice really say. That notice says that, well, they're going to demolish the building, or they're going to board the building up, or they're going to clean the property up, they're going to remove any hazardous or obnoxious waste. Well, that's what the statute says, but every time I've read that, I think to myself, what are you going to do? So Mr. Ballinger testified at trial. Dennis Ballinger, Jr. testified. There is a senior also. Okay. It's even a little more complicated than that. Sorry about that. All right. Well, my question was, was he asked, did you get this notice that the Secretary of Dennis Ballinger Real Estate accepted on behalf of Vista Securities? Again, I don't have the transcript, but my recollection was he was asked that, and he said no. Okay. So all right. So I'm not sure if that's in the record or not, but he's got – he and his father have several corporations all working out of the same address. It did go to that address. Correct. And he says, I didn't get it because the Secretary of one of my corporations received it, but she doesn't work for this other corporation. And I'm going to be honest with you. I don't know if – my recollection, I've slept a lot since then, was whether he testified, I don't remember getting that notice, or I didn't get that notice. I can't – you know, the theory in the text. I mean, you can understand why we might be just a little bit – find that a little suspect. Sure. Yeah. But it wasn't even addressed to the registered agent, Michael J. Ballinger. You can get on the Secretary of State's website, and it's going to say it. Vista Securities, Inc., an LLR corporation. He's a good-standing registered agent, Michael J. Ballinger. It was addressed to the owner of record, Vista Securities. It was just Vista Securities, Inc. Had you exercised a little due diligence, you'd find out Michael J. Ballinger is the registered agent, and at least addressed the notice properly. I think you would have enhanced or improved your position in this case had you done that. Instead, you just say Vista Securities, and you mail it to an address the secretary that's a non-employee signs for. I think that is a defective notice. Something else that was mentioned that, again, going back to the ownership versus title argument, the evidence that was introduced at the trial was that Vista Securities had never turned the power on to that property in their name, or its name, never had water service turned on in its name. My recollection as a testimony was that the power and water had at one time been turned on in the name of the contract buyer. Thank you. Thank you. Thank you both for your recent arguments. The court will take the matter under advisement to render its decision. We will stand in recess until 9 a.m. tomorrow.